1
2
3
4
5          UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF WASHINGTON
6
7    ALEX C. BARROW,

8          Plaintiff,                    No.  2:14-CV-269-RHW

9          v.

10   CAROLYN W. COLVIN,                  **ORDER GRANTING PLAINTIFF'S**
     Acting Commissioner of Social       **MOTION FOR SUMMARY**
11   Security,                           **JUDGMENT**

12         Defendant.

13         Before the Court are the parties' cross-motions for summary judgment, ECF

14   Nos. 16 & 18. Dana C. Madsen represents Plaintiff Alex C. Barrow and Special

15   Assistant United States Attorney Christopher J. Brackett represents Defendant

16   Commissioner of Social Security (the "Commissioner"). Mr.  Barrow brings this

17   action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the

18   Commissioner's final decision, which denied his application for Insurance

19   Benefits, and Supplemental Security Income under Titles II & XVI of the Social

20   Security Act, 42 U.S.C §§ 401-434 & 1381-1383F.  After reviewing the

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ~ 1**

administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS** Mr. Barrow's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment. The Court **REMANDS** to the Commissioner for further proceedings in accordance with the Order.

## I.    Jurisdiction

Mr. Barrow filed concurrent applications for Disability Insurance Benefits and Supplemental Security Income on April 27, 2011. AR 172-182.  The alleged onset date was April 6, 2006, *id.*, but it was later amended to November 8, 2008. AR 22, 41.

A hearing with Administrative Law Judge ("ALJ") James W. Sherry occurred on November 12, 2012, in Spokane, Washington. AR 36-79. On January 10, 2013, the ALJ issued a decision finding Mr. Barrow ineligible for disability benefits. AR 19-35.  The Appeals Council denied Mr. Barrow's request for review on January 18, 2014, AR 1-3, making the ALJ's ruling the "final decision" of the Commissioner.

Mr. Barrow timely filed the present action challenging the denial of benefits, on August 13, 2014. ECF No. 4. Accordingly, Mr. Barrow's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

//

## II.    Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act.  20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b) & 416.920(b).  Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit.  20 C.F.R. §§ 404.1572 & 416.972.  If the claimant is engaged in

substantial activity, he or she is not entitled to disability benefits.  20 C.F.R. §§ 404.1571 & 416.920(b).  If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c) & 416.920(c).  A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence.  20 C.F.R. §§ 404.1508-09 & 416.908-09.  If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required.  Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings").  If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits.  *Id.*  If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(e)-(f)

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 4**

& 416.920(e)-(f).  If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends.  *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c).  To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)).  Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted).  In determining

whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

//

//

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 6**

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and only briefly summarized here.  Mr. Barrow was fifty years old at the date of the hearing. AR 43. He graduated from high school and completed two years of college. *Id*. He is able to read and write in English and do simple math. *Id*. The ALJ listed his previous relevant work experience to include: commercial or industrial cleaner, animal caretaker, home health aide, telephone solicitor, and animal shelter manager. AR 30.

Mr. Barrow has bilateral glaucoma, insomnia, depression, and a personality disorder. AR 24. He has a past history of drug and alcohol abuse, but he was sober for sixteen months prior to the hearing. AR 64.

## V.    The ALJ's Findings

The ALJ determined that Mr. Barrow was not under a disability within the meaning of the Act from November 8, 2008, his alleged date of onset.  AR 22.

**At step one**, the ALJ found that Mr. Barrow had not engaged in substantial gainful activity since November 8, 2008 (citing 20 C.F.R. §§ 404.1571 *et seq.* & 416.971 *et seq.*). AR 24.

**At step two**, the ALJ found Mr. Barrow had the following severe impairments: bilateral glaucoma, insomnia, depression, and personality disorder (citing 20 C.F.R. §§ 404.1520(c) & 416.920(c)). AR 21.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 7**

At **step three**, the ALJ found that Mr. Barrow did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1. AR 25-26.

At **step four**, the ALJ found Mr. Barrow had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: (1) avoid even moderate exposure to unprotected heights; (2) limit to occupations requiring only occasional peripheral vision or peripheral acuity; (3) natural light setting or without fluorescent lighting; (4) not required to drive a motorized vehicle; (5) able to perform simple, routine, and repetitive tasks and well-learned detailed tasks; (6) work alone or with few others on independent tasks with superficial contact with the supervisors and coworkers; and (7) have no more than occasional and superficial interaction with the general public. AR 26.

Based on his limitations, the ALJ determined that Mr. Barrow was not able to perform his past relevant work. AR 31.

At **step five**, the ALJ found that after considering Mr. Barrow's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that he can perform: Cafeteria Worker and Photocopy Machine Operator. AR 31-32. However, the Vocational Expert testified that of the available Photocopy Machine Operator

positions, only twenty-five percent would be performed without fluorescent

lighting. AR 32.

## VI.    Issues for Review

Mr. Barrow argues that the Commissioner's decision is not free of legal

error and not supported by substantial evidence because the ALJ erred by

improperly discrediting Mr. Barrow's symptom testimony and medical opinion

evidence. ECF No. 16 at 10-11.

## VII.   Discussion

### A. The ALJ Erred in Assessing Mr. Barrow's Credibility

An ALJ engages in a two-step analysis to determine whether a claimant's

testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue*, 533

F.3d 1035, 1039 (9th Cir. 2008).  First, the claimant must produce objective

medical evidence of an underlying impairment or impairments that could

reasonably be expected to produce some degree of the symptoms alleged. *Id.*

Second, if the claimant meets this threshold, and there is no affirmative evidence

suggesting malingering, "the ALJ can reject the claimant's testimony about the

severity of her symptoms only by offering specific, clear, and convincing reasons

for doing so." *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors,

including, "(1) ordinary techniques of credibility evaluation, such as the claimant's

reputation for lying, prior inconsistent statements concerning the symptoms, and

other testimony by the claimant that appears less than candid; (2) unexplained or

inadequately explained failure to seek treatment or to follow a prescribed course of

treatment; and (3) the claimant's daily activities." *Smolen v. Chater,* 80 F.3d 1273,

1284 (9th Cir.1996). When evidence reasonably supports either confirming or

reversing the ALJ's decision, the Court may not substitute its judgment for that of

the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). "General findings

are insufficient:  rather the ALJ must identify what testimony is not credible and

what evidence undermines the claimant's complaints."  *Lester v. Chater*, 81 F.3d

821, 834 (9th Cir. 1995).

The ALJ determined that Mr. Barrow's medically determinable impairments

could be reasonably expected to cause some symptoms; however, the ALJ also

found that Mr. Barrow's statements concerning the intensity, persistence, and

limiting effects of his symptoms were not entirely credible. AR 27.

### 1.  Failure to Treat

An ALJ may factor a claimant's failure to seek or follow prescribed

treatment when assessing credibility. *Molina*, 674 F.3d at 1114. Additionally, when

a claimant fails to "assert a good reason for not seeking treatment, 'or a finding by

the ALJ that the proffered reason is not believable, can cast doubt on the

1    sincerity'" of the claimant's testimony. *Id.* (quoting *Fair v. Bowen*, 885 F.2d 597,

2    603 (9th Cir. 1989)).

3        In his decision, the ALJ noted that the earliest treatment record made

4    available following Mr. Barrow's alleged date of onset was January 13, 2011. AR

5    28. The record, however, indicates that Mr. Barrow was first diagnosed with

6    glaucoma in 1999. AR 252.

7        The ALJ emphasized a repeated pattern of Mr. Barrow's failure to treat his

8    conditions, particularly glaucoma. For instance, the ALJ cited to eye drops

9    prescribed for his glaucoma by Dr. Monty D. Smick, O.D. in April 2011 that Mr.

10   Barrow failed to take. AR 28, 239. The ALJ also noted that it the record is unclear

11   how much the glaucoma has progressed because Mr. Barrow has "not sought

12   regular treatment." AR 29. In addition to glaucoma treatment, Mr. Barrow also did

13   not seek mental health treatment, despite allegations of mental impairments. *Id*. All

14   of these failures to seek treatment, the ALJ concluded, imply that Mr. Barrow's

15   symptoms were not significant enough to merit treatment. AR 28-29.

16       Mr. Barrow argues that he failed to treat because he could not afford to do

17   so. ECF No. 16 at 11-12. Mr. Barrow testified at the hearing that he was unable to

18   afford treatment. His response to the ALJ's inquiry as to whether he had health

19   insurance was "[a]bsolutely not." AR 44. He added that he was without medical

20   coverage since approximately mid-2006. *Id.*

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 11**

1         The parties dispute Mr. Barrow's testimony regarding emergency treatment

2  versus local health clinic treatment. The Commissioner argues in briefing that Mr.

3  Barrow testified that he would not seek treatment from Community Health

4  Association of Spokane unless there was an emergency. ECF No. 18 at 5.  In

5  response, Mr. Barrow argues that his testimony regarding emergency treatment

6  was specific to the emergency room, and the portrayal that he meant a clinic was

7  inaccurate. ECF No. 16 at 11. Having reviewed the transcript, the Court tends to

8  agree with Mr. Barrow that his statements were in reference to emergency rooms

9  specifically. AR 64. Nevertheless, even if interpreted as the Commissioner

10  suggests, the record is replete with evidence that Mr. Barrow cannot afford medical

11  services. There is nothing in the record to contradict the testimony that Mr. Barrow

12  did not seek medical treatment because of his inability to pay, not because his

13  symptoms were not as limiting as described.

14         Under Ninth Circuit law, "disability benefits may not be denied because of

15  the claimant's failure to obtain treatment he cannot obtain for lack of funds." *Orn*

16  *v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (quoting *Gamble v. Chater*, 68 F.3d

17  319, 321 (9th Cir. 1995)). As the Court stated in *Gamble*, "it directly contravenes

18  the primary purpose of the Social Security Act 'to give financial assistance to

19  disabled persons because they are without the ability to sustain themselves.'"

20

*Gamble*, 68 F.3d at 321 (quoting *Gordon v. Schwieker*, 725 F.2d 231, 237 (4th Cir. 1984)).

The ALJ also opined that Mr. Barrow had "not submitted convincing evidence that he has explored all possible resources" for free healthcare, such as "clinics, charitable agencies, public assistance agencies, etc." AR 28. The law does not require a claimant to exhaust every possible method of assistance that might be available to him. A claimant's failure to obtain medical treatment during a period in which he had no medical insurance and could not afford the treatment cannot be used as a basis for the ALJ's finding that his testimony was not credible. *Orn*, 495 F.3d at 638; *See also Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999).

Thus, the Court finds the ALJ erred with regard to rejecting Mr. Barrow's testimony on the basis of his failure to seek treatment due to lack of ability to pay.

**2. Inconsistency in Mr. Barrow's Testimony**

The ALJ also determined Mr. Barrow's credibility based on alleged inconsistent statements in the record.

**a. Socialization**

Of particular concern to the ALJ was an inconsistency between Mr. Barrow's statements in the hearing and in his July 2011 function report regarding his level of socialization.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 13**

First, the ALJ noted that Mr. Barrow initially stated he was estranged from his wife, but later stated that he only socializes with his wife. AR 29. This is a mischaracterization of Mr. Barrow's testimony. In the hearing, when asked about his current living arrangement his actual statement was: "Yeah, and kind of estranged from my current wife. We still talk, but that's where we're at this point-in-time." AR 43. While Mr. Barrow appears to have a complicated relationship with his wife, his testimony is not inconsistent. Despite the use of "estranged," the record is clear that Mr. Barrow still talks with his wife, which is not inconsistent with his testimony that she is the only person he socializes with. This was not a legally sufficient reason for the ALJ to determine Mr. Barrow's testimony was not credible.

The ALJ also based his credibility determination on Mr. Barrow's testimony regarding his living arrangement. He testified that he only socializes with his wife because he does not go out. AR 62. On his function report, he stated that he his homeless and stays with friends. AR 208. This, the ALJ, believed implied "he was socializing at least somewhat with the friends he was living with." AR 29. The record demonstrates very little about his living situation. Moreover, the function report was dated July 2011, AR 215, and his hearing occurred in November 2012, AR 38. This is a significant amount of time for an individual experiencing homelessness, and his living situation could have easily changed. The record is

very limited about his living situation, and it does not shed any clarity on the capacity or duration of his time in friends' homes. The record simply lacks substantial evidence to support the ALJ's conclusion that he is inconsistent about his statements regarding his level of socialization.

### b.  Mr. Barrow's walking problems

Mr. Barrow stated in his function report in July 2011 that he has difficulty walking on sidewalks due to the uneven terrain, but walking is his only form of transportation. AR 211. The ALJ cited this information as an example of inconsistency. AR 29. It is undisputed that Mr. Barrow does not drive, as even the ALJ included this limitation into the calculation of the residual functional capacity. AR 26. Walking is the most basic form of transportation, and the minimum one can do unless completely isolated to their home.

Mr. Barrow stated on the same function report that he goes outside "only when absolutely necessary." *Id.* A claimant need not be "utterly incapacitated" to be eligible for benefits.  *Fair*, 885 F.2d at 603. The law does not require that Mr. Barrow never leave the house, and if he has no other method to transport himself, it is logical that he would walk, despite the challenges walking creates for him. These statements do not evidence inconsistency, much less clear and convincing evidence for a credibility determination.

### c. Insomnia complaints

The ALJ also cited to the function report's statement that despite his alleged insomnia, Mr. Barrow "sleeps more than he used to." AR 29. This, again, ignores the full information on the function report. Mr. Barrow also states that this makes "regular sleep cycles abnormal." AR 209. The record does not provide substantial support for the ALJ's determination; however it does validate Mr. Barrow's complaint, as the treatment records of Mr. Triplett at Community Health Association of Spokane diagnose insomnia. AR 227-229.

### d. Receipt of unemployment benefits

Finally, the ALJ found that Mr. Barrow's receipt of unemployment benefits was evidence that he was not as limited as he claimed because he held himself out as available to work. AR 29. The acceptance of unemployment benefits can be a factor for an ALJ to use when determining credibility. *See Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1998); *see also Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008). The record must also demonstrate that the claimant held himself out as available for full-time, not part-time, work, as "[o]nly the former is inconsistent with his disability allegations." *Carmickle*, 533 F.3d at 1161-62. The record here does not indicate whether Mr. Barrow held himself out for part- or full-time employment. Under the holding of *Carmickle*, the ALJ's determination of adverse credibility is not supported by substantial evidence.

1   In conclusion, the Court finds that the ALJ erred in his finding that Mr.

2   Barrow's subjective complaints were not credible. The ALJ does not provide clear

3   and convincing reasons supported by substantial evidence in the record.

4   **B. The ALJ Properly Rejected the Opinions of Plaintiff's Treating**

5       **Physician.**

6   **1. Legal Standard.**

7   The Ninth Circuit has distinguished between three classes of medical

8   providers in defining the weight to be given to their opinions: (1) treating

9   providers, those who actually treat the claimant; (2) examining providers, those

10  who examine but do not treat the claimant; and (3) non-examining providers, those

11  who neither treat nor examine the claimant. *Lester,* 81 F.3d at 830.

12  A treating provider's opinion is given the most weight, followed by an

13  examining provider, and finally a non-examining provider. *Id.* at 803-31. In the

14  absence of a contrary opinion, a treating or examining provider's opinion may not

15  be rejected unless "clear and convincing" reasons are provided. *Id.* at 830. If a

16  treating or examining provider's opinion is contradicted, it may only be discounted

17  for "specific and legitimate reasons that are supported by substantial evidence in

18  the record." *Id.* at 830-31.

19  The ALJ may meet the specific and legitimate standard by "setting out a

20  detailed and thorough summary of the facts and conflicting clinical evidence,

stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than his or her own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

**2. The ALJ properly accounted for only some of Mr. Barrow's physicians' opinions.**

**a.  Dr. Smick**

The ALJ gave little weight to a letter from Dr. Smick, dated April 19, 2011. AR 30, 262. This letter stated that Mr. Barrow was treated by Dr. Smick on April 18, 2011, and the examination revealed "advanced glaucoma with optic nerve atrophy and visual field loss consistent with glaucoma." AR 262. Dr. Smick prescribed Mr. Barrow eye drops, and he opined that if the glaucoma progressed without intervention, Mr. Barrow would "soon have functional loss of vision and could not perform in many employment positions." *Id.*

The ALJ gave little weight to this letter for two primary purposes. First, he noted that the diagnosis date in the letter (2007) is inconsistent with the record, which demonstrates Mr. Barrow was first diagnosed with glaucoma in 1999. AR 30, 252. While this does demonstrate some inconsistency, it has no effect on Dr.

Smick's examination, nor his prognosis. This is not a legally sufficient reason to reject Dr. Smick's medical opinion.

Second, and more significantly, the ALJ noted that the prognosis was inconsistent with Dr. Smick's other letter and treatment records that stated Mr. Barrow would be able to perform most work related tasks, but he would need to frequently turn his head to compensate for peripheral vision loss. AR 239-240. This record also stated that Mr. Barrow did not return for his follow up appointments. AR 240. In explanation for why the ALJ gave significant weight to this letter, whereas none to the first, he rationalized that "[g]enerally, benefits are not awarded based on future signs and symptoms causing additional limitations, such as those proposed by Dr. Smick in his letter." AR 30.

Mr. Barrow's case is difficult because he has not completed treatment, and his testimony demonstrates that his condition has progressed. AR 53-55. If the ALJ reconsiders Mr. Barrow's symptom testimony, this supports Dr. Smick's assertion that the glaucoma without treatment is progressively worsening. These are both issues to consider on remand.

### b. Dr. Arnold

The ALJ gave little weight to the opinion of Washington State Department of Social and Health Services Dr. John Arnold, PhD. AR 30. The ALJ cited multiple reasoning for this decision: (1) the opinion occurred before Mr. Barrow's

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 19**

1  sobriety date; (2) the limitations were not distinguishable from his drug and

2  alcohol abuse; and (3) much of the assessment was based on self-reporting and a

3  questionably valid Personality Assessment Inventory. *Id.*

4      When a claimant presents with drug and/or alcohol abuse, the ALJ must

5  determine whether the abuse is material to the determination of disability. *See* 20

6  C.F.R. §§ 404.1535(b), 416.935(b); *see also Parra v. Astrue*, 481 F.3d 742, 746-47

7  (9th Cir. 2007). The question is whether the claimant would still be disabled if he

8  stopped using alcohol and/or drugs. *Id.*

9      Dr. Arnold's findings were difficult to separate from Mr. Barrow's

10  addiction. AR 232-235. With regard to anger, irritability, decreased concentration,

11  and sleep difficulties, Dr. Arnold noted that drugs and alcohol may increase these

12  symptoms. AR 234. Further, Dr. Arnold explained that the ratings in the functional

13  limitations section could not be differentiated from drug and alcohol use. *Id.*

14      Mr. Barrow argues that the limitations presented by Dr. Arnold are

15  confirmed by Dr. Pollack's evaluation in January 2013. ECF No. 16 at 15. This is

16  not entirely true. Dr. Pollack found marked functional limitations with regard to

17  Mr. Barrow's ability to perform within a schedule and complete a normal workday

18  or workweek without interruptions. AR 270. The only area in which Dr. Arnold

19  found a marked limitation was in the ability to communicate and perform

20  effectively in a work setting with public contact. AR 234. Dr. Pollack, however,

only found significant limitations (the first step above no limitations) with Mr. Barrow's ability to interact appropriately with the general public. AR 270. The functional limitations are sufficiently different to reject Mr. Barrow's argument that the limitations assessed by Dr. Arnold were confirmed later by Dr. Pollack.

Because the ALJ correctly noted that the functional limitations assessed by Dr. Arnold cannot be ascertained separately from Mr. Barrow's drug and alcohol abuse, the Court finds that the ALJ provided a legally sufficient reason for affording little weight to the opinion of Dr. Arnold and did not err.

### c. Non-Examining State Agency Consultants

The ALJ gave significant weight to the opinions of state agency medical and psychological consultants. AR 29. While the standard for providing significant weight for a non-examining physician in place of an examining or treating physician's opinion is "specific and legitimate," the ALJ strangely provides no reasoning for why he gave significant weight to these opinions. Nevertheless, the only consultant that offered a conflicting opinion was Dr. Underwood. The Court sees no reason to disturb the weight given to the other consultants.

Dr. Underwood stated that she reviewed a medical opinion from Community Health Association of Spokane doctor "Ugorji MD" on January 31, 2011, that predicted Mr. Barrow's glaucoma would resolve in less than ninety days with prescription treatment. AR 83-84.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 21**

On January 31, 2011, records from Community Health Association of Spokane physician assistant Mr. Mark Triplett, PA-C[1], stated Mr. Barrow has "a progressive disease that will worsen over time, and he will lose his vision more rapidly if not on medications." AR 229. This is directly contradictory to the assertion the condition will resolve in ninety days.

Likewise, Dr. Smick opined in April 2011 that the condition would progress without treatment. AR 262. And while Dr. Smick did prescribe eye drops to slow the condition, he did not suggest the condition would resolve in any time period. *Id.*

Because Dr. Underwood's opinion is inconsistent with examining providers' opinions, and the ALJ failed to provide any reasons, let alone specific, legitimate reasons, the ALJ erred in giving significant weight to this opinion.

**C. Remedy**

The Court has the discretion to remand the case for additional evidence and findings or to award benefits. *Smolen*, 80 F.3d at 1292. The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id.* Remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d

---

[1] The administrative record only contains notes from Mr. Triplett on January 31, 2011, and it is unclear why the records of Dr. Ugorji that Dr. Underwood references are not included in the administrative record. However, the Court can only analyze the record that is before it.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 22**

759, 763 (9th Cir. 1989).  In this case, the Court finds that further proceedings are necessary for a proper determination to be made.

"The ALJ has a duty to develop the record . . . even when the claimant is represented by counsel." *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). In this instance, the record is underdeveloped because Mr. Barrow has been unable to seek regular treatment of his conditions, particularly his glaucoma. The record is clear that glaucoma is a progressive disease, particularly when left untreated. AR 229, 262. Mr. Barrow testified in late 2012, almost two years after his most recent eye exam, that his condition had gotten sufficiently worse. AR 53-55.

The Court remands this claim to the Commissioner to have an ALJ re-evaluate Mr. Barrow's claim. A consultative exam would be useful to shed light on Mr. Barrow's conditions and residual functional capacity, and the Court recommends that the ALJ order one. On remand, the ALJ shall re-evaluate the credibility of Mr. Barrow's subjective complaints and properly account for the medical opinions addressed above.  Moreover, it is possible that Mr. Barrow's alleged onset date was incorrect, and that is an issue to be explored by the ALJ at the hearing.

//

//

//

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 23**

## VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is not supported by substantial evidence and contains legal error. Accordingly, **IT IS ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED,** and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

2.  Defendant's Motion for Summary Judgment, **ECF No. 18,** is **DENIED.**

3. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 23rd day of February, 2016.


_s/Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge